**ALEXANDER et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 13482.

United States Court of Appeals Fifth Circuit.

March 6, 1952.

Arthur Glover, Walter G. Russell, Amarillo, Tex., for petitioners.

Carolyn R. Just, Sp. Asst. to the Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to the Atty. Gen., Charles Oliphant, Chief Counsel, John Morawski, Sp. Atty., Bureau of Internal Revenue, Washington, D. C., George D. Webster, Sp. Asst. to the Atty. Gen., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

The decisions of the Tax Court having sustained the commissioner's determination of deficiencies for the calendar years 1933 and 1934, these consolidated petitions were brought to review them. Attacking, as clearly erroneous, the findings on which the decisions rest, they present two questions for our decision.

One of these is whether the Tax Court erred in holding that a partnership claimed to be existing between petitioners' married daughter, Mary Hart, and her uncle, Robert Alexander, was not bona fide, real, and valid, but a pretense, a cloak, and a sham, under whose cover family income was divided for the purpose and with the result of lessening family tax burdens.

The other is whether the Tax Court erred in holding that income attributed to their minor daughter, Frances, during the taxable years involved, was properly attributable to petitioners under Sec. 22(a) [1] of the Internal Revenue Code, 26 U.S.C.A. § 22(a).

For the reason hereafter briefly stated, and upon the authority of our cases, Scherf v. Commissioner of Internal Revenue, 5 Cir., 161 F.2d 495, and Batman v. Commissioner of Internal Revenue, 5 Cir., 189 F.2d 107, we answer the first question in the negative.

This reason is that this is not a case, as some of the cases erroneously decided by the Tax Court have been, where the existence of a family partnership has been denied merely because its effect was to reduce income. It is one, on the contrary, where the Tax Court meets head on the fact issue of sham or reality, and where the claimed partnership is not so specifically and definitely proven by a written instrument or by an oral agreement, whose content and meaning is undisputable, that we are able to say that the Tax Court's finding, that there was no real agreement, was clearly erroneous.

There is unquestionably some evidence from which a fact finder could draw the inference that Robert Alexander and Mary Hart were, for the years in question, genuinely and really members of a partnership. There is other evidence, though, if not of a completely contradictory, at least of an equivocal, character from which a contrary inference could be drawn. It cannot, be said, therefore, that the evidence as a whole is unequivocal or compelling, so that we can with confidence declare clearly erroneous the carefully set out findings, made by the judge of the Tax Court who heard and saw the witnesses, that not Mary but Harley Alexander was Robert's partner.

---

1. "§ 22. Gross income
"(a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * *, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *"

■ If there is any one thing which emerges clearly from the confusion caused by the body of utterances and decisions, administrative and judicial, dealing with claimed family partnerships, leading up to and culminating in Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, and Lusthaus v. Commissioner of Internal Revenue, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679, it is that instead of their being examined with an eye single to determining whether in law and in fact they were a reality or a sham, many of them were examined and dealt with with a gaze, focused too much upon the consequences, to the surtax, of recognizing them.[2]

Under the impetus of this point of view, it has sometimes seemed to be forgotten that it is one thing for the commissioner to properly alert himself to prevent imposition by taxpayers upon the revenue, it is quite another thing for him, the Tax Court, and the other courts, to usurp the legislative function of congress by interpreting the clear and simple statutes involved so as to strike down family partnerships because, and only because, they are such.[3]

2. In Sec. 7 of the Senate Finance Committee Report on H.R. 4473, Proposed Revenue Act of 1951, dealing with family partnerships, and in the Ways and Means Committee Report on the same subject, the present confused state of the law is thus summarized:

"Section 339 of your committee's bill is intended to harmonize the rules governing interests in the so-called family partnership with those generally applicable to other forms of property or business. Two principles governing attribution of income have long been accepted as basic: (1) income from property is attributable to the owner of the property; (2) income from personal services is attributable to the person rendering the services. There is no reason for applying different principles to partnership income. If an individual makes a bona fide gift of real estate, or of a share of corporate stock, the rent or dividend income is taxable to the donee. *Your committee's amendment makes it clear that, however the owner of a partnership interest may have acquired such interest, the income is taxable to the owner, if he is the real owner. If the ownership is real, it does not matter what motivated the transfer to him or whether the business benefited from the entrance of the new partner.*

"Although there is no basis under existing statutes for any different treatment of partnership interests, some decisions in this field have ignored the principle that income from property is to be taxed to the owner of the property. Many court decisions since the decision of the Supreme Court in Commissioner [of Internal Revenue] v. Culbertson (337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659), have held invalid for tax purposes family partnerships which arose by virtue of a gift of a partnership interest from one member of a family to another, where the donee performed no vital services for the partnership. Some of these cases apparently proceed upon the theory that a partnership cannot be valid for tax purposes unless the intrafamily gift of capital is motivated by a desire to benefit the partnership business. Others seem to assume that a gift of a partnership interest is not complete because the donor contemplates the continued participation in the business of the donated capital. However, the frequency with which the Tax Court, since the Culbertson decision, has held invalid family partnerships based upon donations of capital, would seem to indicate that, although the opinions, often refer to 'intention', 'business purpose', 'reality', and 'control', they have in practical effect reached results which suggest that an intrafamily gift of a partnership interest, where the donee performs no substantial services, will not usually be the basis of a valid partnership for tax purposes. We are informed that the settlement of many cases in the field is being held up by the reliance of the field offices of the Bureau of Internal Revenue upon some such theory. Whether or not the opinion of the Supreme Court in Commissioner [of Internal Revenue] v. Tower (327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670) and the opinion of the Supreme Court in Commissioner [of Internal Revenue] v. Culbertson (337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659), which attempted to explain the Tower decision, afford any justification for the confusion is not material—the confusion exists." (Emphasis supplied.)

3. Sec. 7 of the Senate Finance Committee Report on H.R. 4473, etc., continues:

"The amendment leaves the Commissioner and the courts free to inquire in any case whether the donee or purchaser actually owns the interest in the partner-

If there is anything which emerges with clarity from the decision in the Culbertson case, supra, and from the reports of the committees of Senate and House, quoted in notes 2 and 3 supra, it is that the artificial and so-called objective tests of the existence of a partnership, set up in the Tower and Lusthaus cases as conclusive, are not such. The question in each case is one of fact to be determined like any other fact question upon the evidence as a whole, and, as, stated in the Committee Reports, "The same standards apply in determining the bona fides of alleged family partnerships as in determining the bona fides of other transactions between family members".

■ It, therefore is, and remains, true that the acid test for determining the question of the reality and validity *vel non* of a family partnership is to be found in the answer to the question: Was the arrangement real, honest and bona fide, so that all the ordinary incidents and effects of an agreement of partnership flow, each partner bound for the losses, each sharing in the profits, in accordance with his agreement? If the answer is yes, whatever may be found to be the intent or result taxwise, there was a partnership. By the same token, if the answer is that the agreement was not real, with the intent and result that a partnership be created, but a sham, a fraud or a pretense, so that the reality behind the partnership form when unmasked shows itself to be the contrary of what was pretended, there is no partnership, whatever may have been the intent or result taxwise.

Upon a careful examination of the record as a whole, in the light of these views, we are not able to say that the findings of the Tax Court, within the applicable authorities, Sanders v. Leech, 5 Cir., 158 F. 2d 486, and U. S. v. U. S. Gypsum Co., 333 U. S. 364, 68 S.Ct. 525, 92 L.Ed. 746, were clearly erroneous.

■ We answer the second question in the affirmative, upon the authority of Alexander v. Commissioner of Internal Revenue, 190 F.2d 753; Phillips v. U. S., 5 Cir., 193 F.2d 132, and because the commissioner, in his determination, and the Tax Court, in affirming it, have misapprehended the effect in law and in fact of the undisputed facts. They have done this

ship which the transferor purports to have given or sold him. Cases will arise where the gift or sale is a mere sham. Other cases will arise where the transferor retains so many of the incidents of ownership that he will continue to be recognized as a substantial owner of the interest which he purports to have given away, as was held by the Supreme Court in an analogous trust situation involved in the case of Helvering v. Clifford (309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788). The same standards apply in determining the bona fides of alleged family partnerships as in determining the bona fides of other transactions between family members. Transactions between persons in a close family group, whether or not involving partnership interests, afford much opportunity for deception and should be subject to close scrutiny. *All the facts and circumstances at the time of the purported gift and during the periods preceding and following it may be taken into consideration in determining the bona fides or lack of bona fides of a purported gift or sale.* "Not every restriction upon the complete and unfettered control by the donee of the property donated will be indicative of sham in the transaction. Contractual restrictions may be of the character incident to the normal relationship among partners. Substantial powers may be retained by the transferor as a managing partner or in any other fiduciary capacity which, when considered in the light of all the circumstances, will not indicate any lack of true ownership in the transferee. In weighing the effect of a retention of any power upon the bona fides of a purported gift or sale, a power exercisable for the benefit of others must be distinguished from a power vested in the transferor for his own benefit.

"Since legislation is now necessary to make clear the fundamental principle that, where there is a real transfer of ownership, a gift of a family partnership interest is to be respected for tax purposes without regard to the motives which actuated the transfer, it is considered appropriate at the same time to provide specific safeguards—whether or not such safeguards may be inherent in the general rule—against the use of the partnership device to accomplish the deflection of income from the real owner." (Emphasis supplied.)

by refusing to give effect to the fact that, while her father did assist her in obtaining the income in question, it was the fruit of Frances' property, and the assistance was rendered by the father not to himself but to her.

In the reports of the Senate and House Committees on H. R. 4473 (see notes 2 and 3 supra), the fruitful source of error in the application of the Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731 and Clifford cases is so carefully pointed out that a wayfarer, if he be but uninformed and not a deliberate strayer, may not continue to err in the way.

This source has been and is the failure, and sometimes the refusal, of commissioner and Tax Court to recognize and give effect to the difference, on the one hand, between tax evasion, the use of pretenses and forbidden devices to lessen or defeat taxes, and, on the other, tax avoidance, the making of lawful, that is of bona fide and valid, dispositions and arrangements in respect to property and services, with the purpose and result of effecting legally permissible tax savings. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596.

Here, nothing occurred which was either more or less than occurred in the Phillips and Alexander cases supra. In each a farmer and ranchman tried to contribute to the training and development of his daughter who had shown interest in farming and had worked on a farm, by giving her cattle and arranging for her to have a farm, and, instead of hiring someone to perform for her what services were required, performed them himself as a matter of paternal interest and affection.

To say that the profits derived from Frances' land and cattle here and in Alexander's case, and the losses sustained in Phillips' case, were, merely because in each instance the father helped his child by attending to necessary business details, attributable to the parents and not to the children is completely specious reasoning. It is to deny the fundamental verities of the traditional parent and child, father and daughter relationship existing in America, and especially in the farming and ranching areas, where individuality, early independence, competence and self reliance is the rule, and where effective participation in 4-H, F & A Clubs, Fat Stock Shows and County Fairs is the entirely laudable ambition of farmbred boys and girls.

The decision and judgment of the Tax Court, finding the partnership invalid is affirmed. Its decision and judgment taxing to her parents the proceeds of cattle and farming operations having to do with cattle given to, and with farm land leased for, their daughter Frances, is reversed with directions to disallow the deficiencies.

RIVES, Circuit Judge (specially concurring).

I concur in the result and in most of the opinion. When the opinion speaks of examining a claimed family partnership with an eye single to determining whether in law and in fact it is a reality or a sham, I take those words to mean not merely that the partnership must be valid according to state law standards, but also that it must be tested in the light of the economic realities underlying the federal income tax law. My understanding is that every contract, whether of trust, employment, partnership, or other business relationship, in order to be recognized in attributing income, must meet the tests of economic reality according to the concepts of the federal income tax law. That is recognized in the part of the Senate Finance Committee Report quoted in the third footnote to the opinion which says: "Cases will arise where the gift or sale is a mere sham. *Other cases* will arise where the transferor retains so many of the incidents of ownership that he will continue to be recognized as a substantial owner of the interest which he purports to have given away, as was held by the Supreme Court in an analogous trust situation involved in the case of Helvering v. Clifford (309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788)." (Emphasis supplied.)

In determining "whether the partnership is real within the meaning of the federal revenue laws", Commissioner of Internal Revenue v. Tower, 327 U.S. 290, 66 S.Ct. 532, 537, 90 L.Ed. 670, or whether "the parties in good faith and acting with a business

purpose intended to join together in the present conduct of the enterprise", Commissioner of Internal Revenue v. Culbertson, 337 U.S. at page 742, 69 S.Ct. at page 1214, we should apply the earner test, Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241 as well as the ownership test, Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. Generally, partnership income is the product of both personal services and capital. The division of profits according to the partnership agreement must not be patently unreasonable when compared with the actual contributions of labor and capital of the family partners. See Woosley v. Commissioner of Internal Revenue, 6 Cir., 1948, 168 F.2d 330, 333; Hartz v. Commissioner of Internal Revenue, 8 Cir., 1948, 170 F.2d 313, 318.

In the Culbertson case the Court said that, "No question as to the allocation of income between capital and services is presented in this case, and we intimate no opinion on that subject." 337 U.S. at page 748, 69 S.Ct. at page 1217. However, that subject is dealt with in Section 340(b) of the Revenue Act of 1951, 26 U.S.C.A. § 191, relating to "Family Partnerships" as follows: "In the case of any partnership interest created by gift, the distributive share of the donee under the partnership agreement shall be includible in his gross income, *except to the extent that such share is determined without allowance of reasonable compensation for services rendered to the partnership by the donor, and except to the extent that the portion of such share attributable to donated capital is proportionately greater than the share of the donor attributable to the donor's capital."* (Emphasis supplied.)

It is true that that section further provides: "The determination as to whether a person shall be recognized as a partner for income tax purposes for any taxable year beginning before January 1, 1951, shall be made as if this section had not been enacted and without inferences drawn from the fact that this section is not expressly made applicable with respect to taxable years beginning before January 1, 1951." 26 U.S.C.A. § 191 note.

However, I am assuming as indicated by the court in this case in its references to the legislative reports preceding the enactment of that section, that we may refer to the legislative development of the law in arriving at its prior meaning and content. It seems to me that even for the years before the 1951 Revenue Act became effective, economic realities have to be taken into consideration in determining the validity and effect taxwise of a family partnership.